SECOND DISTRICT COURT OF THE CITY OF PATERSON.

ANNIE BROWN, INDIVIDUALLY AND EXECUTRIX OF THE
LAST WILL AND TESTAMENT OF MEYER BROWN, DE-
CEASED, PLAINTIFF, v. STEIN-JOELSON BENEVOLENT
ASSOCIATION, A CORPORATION OF THE STATE OF
NEW JERSEY, DEFENDANT.

Decided January 4, 1934.

For the plaintiff, *Mickel, Bernstein & Appel* (*Jacob L. Bernstein,* of counsel).

For the defendant, *Meyer W. Stein.*

ROSENSTEIN, J.   Plaintiff sues, as the widow of Meyer Brown, for $400 death benefit, which the defendant society pays to the widow of each deceased member for funeral expenses, and $100 for a burial grave, which defendant failed to supply her testator.   Meyer Brown, who died December 26th, 1932, had paid no dues since January of that year.

Defendant resists this action because of the provisions of article 15, section 11 of the by-laws of the society: "Any member in arrears for more than a period of two quarters, shall not be entitled to any benefit excepting a burial grave."

Plaintiff argues that, because, as is conceded, defendant took no formal action looking toward the suspension or expulsion of Meyer Brown, she is entitled to recover in this action.   Formal action by defendant as a prerequisite to depriving him of the death benefit, however, was necessary only (1) if the cause of suspension or expulsion was one as to which a member could present a defense (*Berkhout* v. *Supreme Council,* 62 *N. J. L.* 103; 43 *Atl. Rep.* 1)—or (2), if the by-

laws of the organization provided for such formal action by the society as a prerequisite to suspension or expulsion. *Supreme Lodge* v. *Eskholme, 59 N. J. L.* 255; 35 *All. Rep.* 1055. Even if the ground of such suspension or expulsion is one as to which a member could present a defense, and the by-law providing therefor fails to provide the member with an opportunity of defending himself against the charge upon which the expulsion is based, so that ordinarily the proceeding is void, nevertheless, it has been held that expulsion under such circumstances will be sustained where it conclusively appears that the member could not possibly have derived a benefit from a hearing, had he been given one. *Berkhout* v. *Supreme Council, supra.*

Whether or not Meyer Brown lost his death benefit in the defendant society depends upon whether or not the provision of article 15, section 11 of the by-laws is self-executing.

"The laws of some societies in regards to the suspension or expulsion of members are couched in such terms as to render them self-executing, in which case a society need not take affirmative action against a delinquent or offending member, but his membership is lost immediately upon the occurrence of the act or default, which by the rules of the society, constitutes grounds for suspension or expulsion. This is usually the case with regard to the suspension or expulsion for the failure to pay dues and assessments within the prescribed time, and accordingly, under the laws of many societies no affirmative action on the part of the society is necessary in order to terminate the membership of the defaulting member." 7 *Corp. Jur.* 1101.

In *O'Keefe* v. *Barry Benevolent, &c., Association,* 74 *N. J. L.* 435; 66 *Atl. Rep.* 601, the by-laws provided that no member of the association should be allowed sick benefits unless he was clear of all debts on the books of the association. The Supreme Court, per Mr. Justice Trenchard, said: "If, O'Keefe, who was a member, was not clear of all debts on the books of the association at the time the suit for sick benefits was started, said indebtedness would have been a complete defense to that action under article 21 above mentioned."

Plaintiff contends that her decedent was expelled—and that since no notice was given him and no opportunity to defend himself, such action is invalid to deprive him of his death benefit. This contention is unsound. There was no expulsion. The only question is whether decedent lost his death benefit because of section 11, article 15 of the by-laws, or whether its effect was suspended by virtue of some other provision of the by-laws.

Some difficulty occurs in cases such as the one at bar by reason of the fact that membership in fraternal organizations includes two classes of rights: (1) sick or death benefits, which are property rights and (2) the fraternal, social or other benefits of membership, which are not property rights. *Johnson* v. *Grand Lodge*, 81 *N. J. L.* 511; 79 *Atl. Rep.* 333. Usually, provision is made for affirmative action on the part of the association, before a member can be deprived of his membership. Failure to take such affirmative action, *i. e.*, failure to give notice and/or conduct a hearing, means that the member still retains such status. On the other hand, the member is usually deprived of his right to benefits, *ipso facto*, and without requiring any affirmative action by the association. This distinction was illustrated in *Ostman* v. *Supreme Lodge, &c.*, 85 *N. J. L.* 86; 88 *Atl. Rep.* 949 (opinion per Mr. Justice Trenchard):

"The by-laws of the order prohibit members of the relief fund from engaging in any of the following occupations: Bartenders, saloon keepers, hotel proprietors who personally dispense spirituous or malt liquors, &c.—and further provided that if any member shall engage in any such prohibited occupation, the membership of such person and all rights and benefits thereunder shall thereby be forfeited and the relief fund certificate shall become null and void, and he or she shall be liable to trial therefor as for an offense and upon the conviction thereof, shall be expelled from the order.

"The contract, as thus constituted, it will be seen, deals with two classes of rights, namely, the right to membership in the order and the rights to the benefits of the relief fund. By it, when a member engages in a prohibited occupation, two

things result, namely: (1) the relief fund certificate becomes null and void atomatically; and (2) suspension from the order upon conviction of the offense.

"That the provision rendering void the relief fund certificate is self-executing, without trial, conviction and expulsion is made quite plain * * *."

Each case must be decided upon a construction of the constitution and by-laws of the society involved. Sometimes the language of the by-laws and application of the association, may be such as to show that procedure for expulsion is a condition precedent not merely to ending the membership status of the party concerned, as in the case last cited, but also to terminating his property rights in the sick and death benefits of the association. Where this occurs, plaintiff is entitled to recover sick or death benefits, unless defendant has taken the affirmative action required. This was the situation in the case of *Autrim* v. *Telegrapher's Benevolent Association,* 93 *N. J. L.* 213; 707 *Atl. Rep.* 458. Section 608 of the by-laws of the defendant association provided that, upon the death of a member, an assessment of $1 should be levied upon each surviving member, and in case payment should not be made within thirty days thereafter, the delinquent member was to forfeit all claims and membership to the society. Obviously, therefore, the forfeiture did not occur until thirty days after the assessment of $1 was levied. An assessment is not levied until notice of it was given to the member. Otherwise, obviously there would be a danger of a member, absent from the meeting voting the assessment being ignorant thereof, so that he would naturally not pay. To prevent this, it was concluded that personal notice must be given to him. Consequently, the provision for loss of death benefits was held not self-executing.

Plaintiff also relies upon *Eckert* v. *Star of Elizabeth Council, No. 37,* 95 *N. J. L.* 248; 116 *Atl. Rep.* 708. In that case also, the express language of the by-laws made affirmative action by the association a condition precedent before the member could be deprived of sick or death benefits. This is the reasoning upon which the Court of Errors and Appeals came to its conclusion:

"The point that the benefit was forfeited by default in payment of dues we think is also without substance. The claim is that after thirteen weeks' default in dues the member is, under the by-laws, automatically suspended and benefits ceased until all arrears, both those which led to the alleged automatic suspension and those occurring afterwards, are paid up and the account is absolutely clear and has so continued for four weeks; and that the deceased member in fact became thirteen weeks in arrears and never squared the account until two days before her death. The facts are correctly recited but do not lead, on our view of the by-laws, to the result claimed. Article 7, section 10, reads: 'This council shall require a member who has become thirteen weeks or more in arrears for weekly dues, to pay the entire amount due and stand suspended from sick and death benefits for the space of four weeks after the entire amount of arrearages has been paid.'

"Section 1 of article 10 is to the same effect, and section 2 provides for a report of arrearages to the council, notice by mail to the member, and declaration of suspension in open council was required to effect a suspension, and apparently none was taken."

Here, once again, is a provision that is not self-executing, because, before suspension could occur, affirmative action by the association was required, namely, declaration of suspension in open council.

Plaintiff further relies upon the case of *Bushko* v. *First Uhro, &c., Society,* 106 *N. J. L.* 504; 148 *Atl. Rep.* 724. In that case, the by-laws of the defendant provided:

"Any member who has not paid his dues for a full three months shall not receive the sick or death benefit provided for in the by-laws and is no longer a member," but this was modified by the application for membership, which contained the following statement:

"In case of any disaster happens to me, I will not claim any benefit if I be three months in arrears. If I be notified by registered letter sent by the secretary of the society, and if I do not then settle my accounts, I shall be expelled from the society. If I settle my accounts after being notified by the

secretary of the society, I shall pay the fine of twenty-five cents for the trouble caused to the society by me."

Thus it will be seen that a condition precedent to the expulsion of a member was created, whereby an opportunity was given to a member, before being expelled, to settle his accounts. In other words, it was incumbent upon the society to give the member notice by registered mail, that he might avail himself of this opportunity. This was the gist of the charge of the trial court to the jury, and the charge was approved and upheld by the Court of Errors and Appeals. Since the loss of death benefits followed a failure to pay dues, and since a further opportunity to pay dues was given the defendant, by requiring notice to him of his indebtedness before expulsion could occur, it was a fair conclusion to say that notice of his indebtedness was a condition precedent not only before he could be deprived of his membership, but also before he could be deprived of his sick or death benefits. Because by one act, payment of dues in arrears, the defaulting member could preserve both his property right and membership status in the society, it was fair to hold that the requisite notice was a condition precedent to the loss of either right. Hence, the provision was not self-executing.

There is no such condition precedent in the case at bar. It is true that another section of the by-laws, to wit, article 5, section 3, reads as follows:

"The financial secretary shall keep a correct account, call the members to every meeting by postal card, two meetings before the end of the quarter to send enclosed letters to each and every member, stating their indebtedness to the society, at the first meeting of the quarter to announce and list members in arrears from the last quarter, to send registered letters by resolution of the society, to members in arrears."

This provision of the by-laws simply lists the duties of the financial secretary, a ministerial officer. Nowhere does it tie up, as in the case of *Bushko* v. *First Uhro, &c., Society, supra,* with the provision respecting loss of death benefits. Nowhere, in the case at bar, is the provision for loss of death benefits for non-payment of dues qualified by the provision implying that

the action of this section is to be stayed until after a member has had notice. There is a provision that notice of non-payment shall be given by the secretary, but there is nothing to say that until a notice is given and until further default, shall the effect of the clause terminating the death benefit be held in abeyance.

It is true, as contended by plaintiff, that "forfeiture in instruments of this class, dealing with property rights, are not favored, and constructions of written instruments of that character against such result will be preferred, if the instrument will bear it rather than the adoption of an interpretation giving the opposite effect." *Johnson* v. *Grand Lodge, supra.*

However, unless the by-laws, by a reasonable construction, can be held to preserve the property right of a member, such rights will be held to have lapsed. Otherwise, the court would be making a new contract for the parties. In *Antrim* v. *Telegraphers' Benevolent Association, supra,* in *Eckert* v. *Star of Elizabeth Council, No. 37, supra,* and in *Bushko* v. *First Uhro, &c., Society, supra,* the court could rule against a forfeiture of the death benefits involved, because although the by-laws provided for a lapse of such rights upon non-payment of dues or assessments, nevertheless, such clause had to be read in the light of other provisions in the by-laws expressly providing for some affirmative action by the association before loss of rights by the members. Where, however, there was no such limitation upon the society, as in *O'Keefe* v. *Barry, supra,* and in *Ostman* v. *Supreme Lodge, supra,* it was held that the provision for loss of sick or death benefits was self-executing, and the member was held to have lost such rights *ipso facto* by the non-payment of dues.

Plaintiff is entitled only to the sum of $100, the amount paid for a grave, and which, even though her decedent was in arrears as to his dues, defendant should have furnished.